TRAYLOR *v.* THE FARMERS BANK & TRUST COMPANY.

4-5059

Opinion delivered May 9, 1938.

*Henry Stevens,* for appellant.

*Ezra Garner,* for appellee.

GRIFFIN SMITH, C. J. The questions to be determined involve construction of a written contract to sell land, and the right of a husband to pledge certain notes.

Mrs. Eula Traylor was the owner of land which Dewey C. Pharr undertook to buy. October 17, 1927, Pharr executed a contract, agreeing to pay $300 November 1, 1928, and $250 each succeeding November for five years thereafter. This contract was signed by Mrs. Traylor; also by her husband, O. G. Traylor. Upon failure of Pharr to perform the essential conditions of the contract "from the date of such failure [it shall] be null and void." Upon default as to any of the notes, all previous payments forfeited, "and the relation of landlord and tenant shall arise between the parties for one year from January 1 immediately preceding the date of default, and the said party of the second part [Pharr] shall pay rent at the rate of $175 for occupying the premises

from the said January 1 to the time of default, such rent to be due and collectible immediately upon such default.''

The six notes given by Pharr were payable to the order of O. G. Traylor and recited retention of a lien. If any note defaulted, all immediately became due, . . . ''and the holder of this note shall have the right to demand and sue and enforce the payment hereof after such default.''

O. G. Traylor became indebted to the Farmers Bank of Emerson for $898.46. The cashier who made the loan testified that the obligation arose March 31, 1932, at the time Traylor executed his note to the bank. Traylor testified that the note referred to was a renewal and that new money was not advanced.

Assets of the Farmers Bank of Emerson passed in due course to appellee Farmers Bank & Trust Company. The latter (October 25, 1933) brought suit against Traylor and other necessary parties to collect on the item of $898.46. The bank alleged that at the time the loan was made Traylor pledged to its predecessor the six Pharr notes.

Pharr died in 1930. Mrs. Traylor died in November, 1933. Each left minor heirs. The decree recites that guardians *ad litem* were appointed for the minors and that answers were filed.

Payment indorsements on the Pharr notes were: November 1, 1928, cash, $200; interest, $24; November 1, 1929, interest, $8; December 31, 1929, interest, $6.46.

The principal contention for reversal of the decree is that when the notes were not paid at maturity the contract of sale automatically became a rental contract; that inasmuch as the first note ($300) was not fully paid November 1, 1928, the undertakings to sell and purchase failed. It is further urged that O. G. Traylor did not have authority to hypothecate notes given in payment of his wife's separate estate.

When Traylor was asked how the bank came into possession of the Pharr notes, he said that he borrowed some money, . . . ''and after that I was in there one day, and I said, [addressing the cashier] 'Ned, I have some

notes I will leave with you in case the Bank Commissioner comes back here and gets you in a tight place.' I had a drawer there in the bank where I kept my papers, and I left them there.''

The chancellor seems to have disregarded this testimony—an admission by Traylor that he was attempting to deceive examiners. Such testimony should have been so treated. One who perpetrates a fraud is estopped to claim its benefits.

The evidence, as abstracted, does not show how the parties treated the 1927 sales contract when the note due the following year was not fully paid; nor is there any satisfactory evidence as to the attitude of the Traylors and Pharr when other defaults occurred, other than a statement by Traylor that his wife objected when Pharr failed to pay his rent. Taken as a whole, the testimony is not sufficient to overcome the presumption that default had been waived, for as late as 1932 O. G. Traylor treated the notes as valid and pledged them to the bank. We are of the opinion that the bank was rightfully in possession of the notes. They were made payable to Traylor, and he testified that his wife permitted him to handle her business ''always.''

On all points raised by the appeal there is a preponderance of testimony to support the decree, in which judgment was rendered against Traylor on his note to the bank; also in favor of Traylor and the heirs of Eula Traylor on the Pharr notes, subject to the interest the bank acquired through the assignment, with excess amounts to proper parties.

Affirmed.